FILED
2018 Aug-06 PM 03:42
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# WESTERN DIVISION

| | |
|---|---|
| THEODORE PICKENS, | ) |
| Plaintiff, | ) |
| v. | ) Case No.: 7:16-cv-01742-JHE |
| GUY'S LOGGING COMPANY, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER[1]

On October 25, 2016, Defendant Guy Enterprises, LLC (incorrectly identified in the complaint as Guy's Logging Company) ("Guy Enterprises") removed this action from the Circuit Court of Sumter County, Alabama pursuant to 28 U.S.C. §§ 1332, 1441(a)-(b), and 1446. (Doc. 1). Plaintiff Theodore Pickens ("Pickens") alleges he was injured when he was struck by equipment being hauled on a Guy Enterprises' commercial 18-wheeler while he was a pedestrian standing on the shoulder of County Road 34 in Sumter County, Alabama. (*See* doc. 1-1). He asserts the following state law claims: (1) negligence, (2) recklessness/wantonness, (3) negligent and wanton entrustment, (4) negligent training, retention, and supervision, (5) *respondeat superior*, and (6) fictitious defendants. (*Id.*). Guy Enterprises denies it's employee truck driver caused an accident or Pickens' injuries. (Doc. 10 at 1).

Guy Enterprises moves for summary judgment as to all of Pickens' claims pursuant to Federal Rule of Civil Procedure 56.[2] (Doc. 24). The motion is fully briefed and ripe for review.

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment. (*See* doc. 8).

[2] Guy Enterprises' request for oral argument (doc. 24 at 1) is **DENIED**. Having reviewed the submitted materials, the undersigned does not believe that oral argument would be

1

(Docs. 25, 27, and 28). As explained below, having considered the motion, briefs, and accompanying evidence, Guy Enterprises' motion for summary judgment (doc. 24) is **GRANTED IN PART AND DENIED IN PART**.

## I. Standard of Review

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 447 U.S. 317, 322 (1986). The moving party bears the initial burden of proving the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party, who is required to "go beyond the pleadings" to establish there is a "genuine issue for trial." *Id.* at 324. (citation and internal quotation marks omitted). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The Court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, (1970); *see also Anderson*, 477 U.S. at 255 (all justifiable inferences must be drawn in the non-moving party's favor). Any factual disputes will be resolved in Plaintiff's favor when sufficient competent evidence supports Plaintiff's version of the disputed facts. *See Pace v. Capobianco*, 283 F.3d 1275, 1276-78 (11th Cir. 2002) (a court is not required to resolve disputes in the non-

---

beneficial at this time.

moving party's favor when that party's version of the events is supported by insufficient evidence). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam) (citing *Bald Mtn. Park, Ltd. v. Oliver*, 836 F.2d 1560, 1563 (11th Cir. 1989)). Moreover, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252).

## II. Summary Judgment Facts

Pickens contends that on October 16, 2015, he was a pedestrian on the shoulder of County Road 34 in Sumter County and his left elbow was struck by a piece of oversized equipment on a tractor trailer owned and operated by Guy Enterprises. (Doc. 1-1 at ¶ 8; doc. 25-2 at 20-21 (72:8-74:2)).

Beginning in 2007, Pickens and his wife, Sernaylia Pickens, ("Mrs. Pickens") would make an annual trip from Birmingham to Panola, Alabama to operate Mrs. Pickens' food catering business for the Panola Day parade. (Doc. 25-2 at 13 (42:2-43:12); doc. 25-3 at 5 (11:3-16)). On October 16, 2015, Pickens, Mrs. Pickens, and Randy Clegg ("Clegg") traveled to Panola, Alabama to set up for the parade that would take place the following day. (Doc. 25-2 at 13-14 (45:2-47:17)).

Upon arrival in Panola, the Pickens parked their van and the trailer adjacent to the road on the shoulder. (Doc. 52-2 at 16, 23 (57:2-8, 83:21-23); doc. 25-3 at 11 (37:2-19)). A photograph depicting the approximate location of the area where the Pickens parked their vehicles and trailer is provided at document 25-4 at 2. Although Pickens brought lights with him to set up at the location, he did not have any lights operating at the time of the accident. (Doc. 25-2 at 18 (63:17-23)).

3

At approximately 7:15 p.m., Pickens and Clegg began unloading equipment off the trailer. (Doc. 25-2 at 18-19 (65:2-7, 67:18-20)). After the equipment had been unloaded, Pickens and Clegg intended to close the trailer gate. (*Id.* at 19 (69:3-21)). Pickens was standing on the side of the trailer closest to the roadway, with his back to oncoming traffic, and he bent down to lift the trailer gate. *Id.* Pickens was on the shoulder of the road, but he does not know the distance he was standing away from the road. (*Id.* at 18 (63:7-11)). Pickens was then struck on the left elbow/arm by an object being hauled on a tractor trailer. (*Id.* at 19-20 (69:3-14, 73:20-21)).

Pickens did not see or hear any vehicles approaching before the accident. (Doc. 52-2 at 20 (70:18-71:3)). Pickens first observed the tractor trailer after the accident. (*Id.* at 17, 20 (58:5-22, 72:1-14)). Pickens does not know the speed of the tractor trailer before the accident. (*Id.* at 21 (77:13-21)). After the accident, Pickens recalled the tractor trailer "not going that fast." (*Id.*). Mrs. Pickens testifies she heard the tractor trailer approaching before the accident, but she did not observe the tractor trailer until after the accident. (Doc. 25-3 at 11 (34:4-5)).

On the same day, Ronnie Gray was hauling equipment from a job site in his capacity as an employee for Guy Enterprises on County Road 34 in Panola, Alabama. (Doc. 25-5 at 14-15, 17 (52:16-54:7, 63:5-7)). Gray reduced his speed and activated his flashers while traveling through Panola, due to the people setting up on the side of the road in preparation for the parade. (*Id.* at 14-15 (52:16-53:3)). Gray testified he has no knowledge of making contact with any pedestrian that day. (*Id.* at 18 (66:21-67:6)).

Following the accident. Mrs. Pickens identified the Guy Enterprises logo on the side of the tractor trailer as it continued down County Road 34. (Doc. 25-3 at 11, 16 (34:8-19; 54:1-4)). Shortly thereafter, Mrs. Pickens observed the same tractor trailer that was involved in the accident come traveling back through Panola and was able to obtain the license plate number of the escort

vehicle accompanying the tractor trailer. (*Id.* at 16 (54:1-4)).

On the date in question. Gray held a valid commercial driver's license ("CDL"). (Doc. 25-5 at 7 (21:9-22)). Gray obtained his CDL in 1993 and it has never been revoked or suspended. (*Id.*). Notwithstanding the events at issue in this case, Gray has never been involved in a vehicle accident while driving a commercial vehicle. (*Id.* at 8 (26:7-14)). Brad Guy ("Guy"), the owner of Guy Enterprises, had observed Gray drive before he was hired, and Guy obtained a reference from Gray's former employer when he was investigating Gray's driving history. (Doc. 25-6 at 7, 10-11 (22:2-16; 35:12-36:5; 38:9-39:20)).

Although Pickens asserts that "Gray testified at his deposition that [Guy Enterprises] never offered any type of training regarding the operation of tractor-trailers and handling of large loads during his employment at [Guy Enterprises]," (doc. 27 at 2 (citing doc. 27-7 at 14, 17 (52, 63)), Gray's testimony indicates he had already received training at a truck driving school in Vernon, Alabama and from prior employers where he drove commercial trucks and that Guy Enterprises hired him because he already had experience driving trucks, (doc. 25-5 at 8-9 (28:1-30:23)). Pickens also attempts to highlight Guy's testimony that Guy Enterprises did not provide any type of orientation or training to any of its employees, including Gray. (Doc. 27 at 2 (citing doc. 27-5 at 4-5 (11-12)). The cited deposition testimony does not support Pickens' assertion. However, Guy does later testify that, at the relevant time, Guy Enterprises "didn't per se back then have a safety program" (doc. 25-6 at 5 (16:12-14)), and explained that Guy Enterprises hires experienced drivers, like Gray, that have already been trained and who have a good driving record. (Doc. 25-6 at 7 (21:22-22:16)).

Without citation, Pickens also asserts that "Gray testified that he was completely unfamiliar with Federal Motor Carrier Safety Regulations that governed his conduct while operating a tractor-

5

trailer." (Doc. 27 at 2). Gray testified that he had read the Federal Motor Carrier Safety Regulations, but did not remember all of the regulations at the time of his deposition. (Doc. 25-5 at 8 (27:3-28:13)). Gray also testified that he received training on the Federal Motor Carrier Safety Regulations during his attendance at the three-week-long truck driving school in Vernon, Alabama. (*See id.*).

**III. Analysis**

As an initial matter, there are only four claims properly before the court to be evaluated for purposes of summary judgment, Counts One through Four as listed in the complaint. (*See* doc. 1-1). First, listed as "Count Five" in the complaint, "*Respondeat Superior*" is not an independent cause of action or claim. Instead, it is a doctrine under which a plaintiff may recover against an employer defendant for an employee's negligent or wanton conduct when the employee was acting within the scope of his or her employment. *See Newsome v. Mead Corp.*, 674 So. 2d 581, 583 (Ala. Civ. App. 1995). Because Guy Enterprises is the only defendant in this action, Pickens' claims for negligence and recklessness/wantonness based on the conduct of the employee truck driver require the application of *respondeat superior* to extend liability to the employer. To the extent Pickens attempts to assert "*respondeat superior*" as a claim in and of itself, summary judgment is due to be granted. Otherwise, this doctrine will be evaluated where necessary to determine if any potential liability for the employee truck driver's conduct should be extended to Guy Enterprises. Likewise, "Count Six" for "Fictitious Defendants" is not a proper cause of action. It is well-settled that "the Federal Rules do not authorize suit against fictitious parties." *Holley-Jones v. Tusacloose Cnty., Ala. Health Dept.*, No. 7:08-CV-00257-LSC, 2008 WL 11379871, *2 n.4 (N.D. Ala. May 28, 2008) (citing *CSX Transp., Inc. v. United Transp. Union*, 2007 WL 1643172, *1 (11th Cir. 2007)). Thus, any claims asserted against fictitious defendants

are due to be dismissed.

### A. Negligence

Guy Enterprises contends it is due summary judgment on Pickens' negligence claim because Pickens was contributorily negligent as a matter of law and is therefore barred from recovering damages on his negligence claim. (Doc. 25 at 7); *see Alabama G.S.R.R. v. Roach*, 116 Ala. 360, 362 (Ala. 1896) ("The rule is well-settled upon sound principles of law, that the proximate contributory negligence of a plaintiff, will defeat a recovery based upon the simple negligence of the defendant.").

To prove contributory negligence, Guy Enterprises must show that Pickens: (1) had knowledge of the condition; (2) had an appreciation of the danger under the surrounding circumstances; and (3) failed to exercise reasonable care by placing himself in the way of danger. *Brown v. Piggly-Wiggly Stores*, 454 So. 2d 1370 (Ala. 1984) (citing *Hatton v. Chem-Haulers, Inc.*, 393 So. 2d 950 (Ala. 1980)). For contributory negligence, Pickens' state of mind is determined by an objective reasonable man standard. *See McIsaac v. Monte Carlo Club, Inc.*, 587 So. 2d 320, 324 (Ala. 1991). The question of whether a plaintiff is contributorily negligent is usually a question for the jury; "[h]owever, where the facts are such that all reasonable [people] must reach the same conclusion, contributory negligence may be found as a matter of law." *Watters v. Bucyrus-Erie Co.*, 537 So. 2d 24 (Ala. 1989). Guy Enterprises contends that, even when the facts of the case are viewed in Pickens' favor, they lead to only one logical, tenable conclusion: that Pickens was contributorily negligent as a matter of law. The court disagrees.

Guy Enterprises points to several affirmative duties Alabama law imposes on pedestrians, including:

> (b) Where a sidewalk is not available, any pedestrian walking along and upon a highway shall walk only on a shoulder, as far as practicable from the edge of the

7

roadway.

(c) Where neither a sidewalk nor a shoulder is available any pedestrian walking along and upon a highway shall walk as near as practicable to an outside edge of the roadway, and if on a two-way roadway, shall walk only on the left side of the roadway.

(d) Except as otherwise provided in this chapter, any pedestrian upon a roadway shall yield the right-of-way to all vehicles upon the roadway.

(Doc. 25 at 11-12) (citing ALA. CODE § 32-5A-215 (1975)). Additionally, Guy Enterprises points out that, "[n]o pedestrian shall suddenly leave the curb or other place of safety and walk or run into the path of a vehicle which is so close as to constitute an immediate hazard." (*Id.* at 12) (citing ALA. CODE § 32-5A-211(b)). Guy Enterprises contends that since the road did not have a sidewalk, Pickens was under a duty to be as far as practicable from the edge of the roadway and yield to any vehicles that were on the roadway and that standing on the side of the trailer closest to the road to lift the gate created an immediate hazard from a passing vehicle. (*Id.*).

While it is undisputed that Pickens had his back turned to oncoming traffic when he was between the trailer and the roadway (doc. 25-2 at 19 (69:3-21); doc. 25-4 at 2) it is unclear exactly how close Pickens was to the roadway or how far the tractor trailer's equipment protruded off the tractor trailer (and whether it protruded beyond the roadway). The picture of the scene provided shows only a circle with an X in it to indicate the approximate location of the trailer; from which the court cannot ascertain Pickens' location. (Doc. 25-4 at 2). Furthermore, because Pickens testified that he did not step out into the roadway when lifting the gate closed, (doc. 25-2 at 25 (70:4-8)), the case law Guy Enterprises offers regarding pedestrians or automobiles entering the roadway is distinguishable. *See* doc. 25 at 8-11 (citing *Serio v. Merrell, Inc.*, 941 So. 2d 960 (Ala. 2006) (the plaintiff was injured when she pulled her vehicle into the path of an oncoming tractor-trailer truck on the roadway); *Baker v. Helms*, 527 So. 2d 1241, 1244 (Ala. 1988) (the plaintiff was

8

found contributorily negligent when he failed to exercise reasonable care crossing the highway)).

There are insufficient facts before the court to conclude that all reasonable people would find Pickens contributorily negligent. To the contrary, there is a question of fact as to whether Pickens failed to exercise reasonable care by placing himself in the way of danger. Guy Enterprises' motion for summary judgment is denied.

**B. Recklessness/Wantonness[3]**

Under Alabama law, "wantonness" is "[c]onduct which is carried on with a reckless or conscious disregard for the rights or safety of others." ALA. CODE § 6-11-20(b)(3). Wantonness is a high *standard* of culpability and "not merely a higher *degree* of culpability than negligence." *Askew v. R&L Transfer, Inc.*, 676 F. Supp. 2d 1298 (M.D. Ala. 2009) (quoting *Tolbert v. Tolbert*, 903 So. 2d 103, 114 (Ala. 2004)) (emphasis added). Wantonness requires the "conscious doing of some act or the omission of some duty, while knowing of the existing conditions and being conscious that, from doing or omitting to do any act, injury will likely or probably result." *Clark v. Kindley*, 10 So. 3d 1005, 1008 (Ala Civ. App. 2007) (quoting *Alfa Mut, Ins. Co. v. Roush*, 723 So. 2d 1250, 1256 (Ala. 1998)); *see also Bozeman v. Central Bank of the South*, 646 So. 2d 601 (Ala. 1994) (quoting *Stone v. Southland Nat'l Ins. Corp.*, 589 So. 2d 1289, 1292 (Ala. 1991)). "Conscious" means perceiving, apprehending, or noticing with a degree of controlled thought or observation: capable of or marked by thought, will, design, or perception." *Berry v. Fife*, 590 So. 2d 884, 885 (Ala. 1991) (quoting *Webster's New Collegiate Dictionary* 239 (1981)).

For Pickens to prevail on a wantonness claim, there must be evidence Gray acted consciously with a purpose of design. *See South Cent. Bell Tel. Co. v. Branum*, 568 So. 2d 795,

---

[3] In cases where recklessness and wantonness are both claimed, the resolution of such claims is handled under Alabama law as simply a claim for wantonness.

9

798 (Ala. 1990) ("[W]anton or willful misconduct is characterized as such by the state of mind with which the act or omission is done or omitted."). There is no such evidence in this case, and the two cases Pickens cites in support of his position are distinguishable. (*See* doc. 27 at 7).

In *Williams v. Werner Enterprises*, the first case Pickens offers for comparison, the court found "there is substantial evidence from which the jury could find that [Mr. Oumer] acted with reckless or conscious disregard of the rights or safety of others by consciously abruptly pulling into the right-hand lane of the interstate and at an unsafe speed in the vicinity of a hillcrest and without properly using flashers or turn signals before proceeding to enter such lane 'and knowing' under such circumstances that, 'injury would likely or probably result.'" No. 1:11-cv-3671-VEH, 2013 WL 6665385, *6 (N.D. Ala. Dec. 17, 2013) (citations omitted). *Williams* also recognizes that "certain actions, taken while driving, may be so inherently dangerous that Alabama's self-destructive behavior presumption is inapplicable or overcome." *Id.* at *4.

Pickens also cites *Scott v. Villegas*, 723 So. 2d 642 (Ala. 1998) for comparison. (*See* doc. 27 at 7). He points out that in *Smith*, the Alabama Supreme Court found that in "viewing evidence in the light most favorable to Scott, we conclude that there is substantial evidence from which the jury could find that Villegas acted with a reckless or conscious disregard of the rights or safety of others by consciously driving the automobile while knowing that he could not control it on the wet pavement and knowing that if he lost control of it, injury would likely or probably result." *Smith*, 723 So. 2d at 644. The Alabama Supreme Court concluded the wantonness claim should have been submitted to the jury. *Id.*

Pickens contends Gray's conduct was wanton because Gray knew that he was traveling with a wide load down a stretch of road with numerous pedestrians on either side of the road. (Doc. 27 at 8). However, Gray's undisputed testimony shows, as he was approaching the stretch

10

of road at issue, Gray saw individuals away from the road, but was not aware of anyone near the road. (Doc. 25-5 at 18 (67:6-10)). Further, it is undisputed Gray was not traveling at a high rate of speed. Gray testified he was traveling fifteen miles per hour with his headlights and flashers on. (*Id.* at 14-15 (52:16-53:3)). There is simply no evidence that Gray acted with a "reckless or conscious disregard of the rights or safety of others" as the defendant in *Williams* or *Smith*. For example, there is no evidence that Gray was warned of people being this close to the road or a need to stop the tractor trailer or honk his horn to alert pedestrians. There is also no evidence Gray was using alcohol or drugs that would impair his driving or that he was driving erratically. Instead, at most, Gray (and/or his escort driver) was inattentive and did not notice how close Pickens was to the road. This type of (at most) inattentive conduct does not rise to the level of wantonness. *See Askew*, 676 F. Supp. 2d at 1302-03 (finding there was a lack of evidence from which a jury could reasonably infer wantonness when a truck driver traveling through fog was unable to stop in time and struck plaintiff's vehicle from behind resulting in a fatality); *Wright v. McKinzie*, 674 F. Supp. 2d 1293, 1302 (M.D. Ala. 2009) (finding a lack of evidence of wantonness to send the claim to the jury when a truck driver crossed a median and crashed into a tractor trailer he thought was in the far lane).

Even when construing the facts in a light most favorable to Pickens, there is a lack of evidence from which a jury could reasonably conclude that Gray acted with reckless or conscious disregard of the rights or safety of others. Guy Enterprises is entitled to summary judgment on Pickens' wantonness claim.

## C. Negligent and/or Wanton Entrustment, Hiring, Training, and Supervision

### 1. Negligent Entrustment Claim (Count 3)

To establish a negligent entrustment, claim under Alabama law, Pickens must show: (1) an

11

entrustment; (2) to an incompetent; (3) with knowledge that he is incompetent; (4) proximate cause; and (5) damages. *Askew v. R&L Transfer, Inc.*, 676 F. Supp. 2d 1298, 1303 (M.D. Ala. 2009) (citing *Pryor v. Brown & Root USA, Inc.*, 674 So. 2d 45, 51 (Ala. 1995)). "[T]he incompetence of a driver is measured by the driver's demonstrated ability (or inability) to properly drive a vehicle." *Id.* (citing *Halford v. Alamo Rent-A-Car, LLC*, 921 So. 2d 409, 413-14 (Ala. 2005)). Thus, to prove negligent entrustment, Pickens must show that Guy Enterprises either knew or should have known that the driver was incompetent to drive. *Bruck v. Jim Walter Corp.*, 470 So. 2d 1141, 1144 (Ala. 1985).

Here, Pickens' claim for negligent entrustment fails because there is no evidence to suggest that Gray was incompetent to drive the tractor trailer. As a licensed, professional truck driver for over two decades, Gray was competent to drive the tractor trailer at the time of the alleged incident. Additionally, there is no evidence that Gray had received any moving violations, been involved in any collisions, or had his license revoked or suspended. *See Askew*, 676 F.2d at 1303 (granting summary judgment on a negligent entrustment claim and finding the tractor trailer driver competent when he had "nearly a decade" of experience despite two moving violations and four minor accidents); *see also Wright v. McKinzie*, 647 F. Supp. 2d 1293 (M.D. Ala. 2009) (finding a commercial truck driver's two criminal convictions, a past license suspension, and two speeding tickets insufficient to establish a negligent entrustment claim). There is no evidence to support Pickens' negligent entrustment claim and summary judgment is due.

### 2. Wanton Entrustment Claim (Count 3)

As the Alabama Supreme Court has explained,

> [t]o establish wanton entrustment, Plaintiffs must establish that [the employer] knew or in the exercise of ordinary care should have known, that [the defendant driver] was incompetent. *See e.g., Bruck v. Jim Walter Corp.*, 470 So. 2d 1141, 1144 (Ala. 1985). Specifically, a claim for wanton entrustment requires a slightly

> modified analysis because wantonness involves a more aggravated state of mind than that required for negligent entrustment . . . [It] . . . is the conscious doing of some act . . . while knowing of the existing conditions and being conscious that, from doing . . . an act, injury will likely or probably result . . . to establish wanton entrustment, [Plaintiffs] must show that [the employer] entrusted the [truck] to [the defendant driver] while knowing that that entrustment would likely or probably result in injury to others.

*Vines v. Cook*, No. 2:15-00111-KD-C, 2015 WL 8328675, *6 (S.D. Ala. Dec. 8, 2015) (quoting *Davis v. Edwards Oil Co.*, No. 2:10-cv-2926-LSC, 2012 WL 5954139, *4 (N.D. Ala. Nov. 28, 2012)). Thus, Pickens needs to present evidence that Guy Enterprises entrusted the truck to Gray while knowing that the entrustment would likely or probably result in injury to others due to Mr. Grays incompetence.

In addition to a lack of evidence that Gray was incompetent, Pickens has not produced any evidence of the "more aggravated state of mind" required to prove a wanton entrustment claim. Guy Enterprises is due summary judgment on Pickens' wanton entrustment claim.

### 3. Negligent Hiring, Training, Retention, and Supervision Claim (Count 4)

To support a claim of negligent hiring, supervision, retention and training, Pickens must demonstrate: (1) Gray committed a tort recognized under Alabama law, (*see Stevenson v. Precision Standard, Inc*., 762 So. 2d 820, 824 (Ala. 1999)); (2) Gray was incompetent to drive his tractor trailer, (*see Lane v. Central Bank of Alabama*, 425 So. 2d 1098, 1100 (Ala. 1983)); (3) Guy Enterprises had actual notice of Gray's incompetence or would have known had they exercised due diligence, (*see Armstrong Bus. Sevrs. v. AmSouth Bank*, 817 So. 2d 655, 682 (Ala. 2001)); and (4) Guy Enterprises failed to respond to this notice adequately, (*see Askew v. R&L Transfer, Inc*., 676 F. Supp. 2d at 1303-04).

To prove a claim under Alabama law for either negligent/wanton entrustment, negligent hiring, negligent supervision or negligent retention, Pickens must demonstrate that Guy Enterprises

13

knew, or in the exercise of ordinary care should have known, that Gray was incompetent. *See Armstrong Bus. Servs. v. AmSouth Bank*, 817 So.2d 665, 682 (Ala. 2001) (negligent supervision); *Bruck*, 470 So.2d at 1144 (negligent/wanton entrustment); *Brown*, 277 So.2d at 895 (negligent retention); *Sanders v. Shoe Show, Inc*., 778 So.2d 820, 824 (Ala. Civ. App. 2000) (negligent hiring). Additionally, an act of incompetence does not prove an improper hiring, training or supervision claim. *See Armstrong Business Services, Inc. v. AmSouth Bank*, 817 So. 2d 665 (Ala. 2001). Specifically, "[i]t is not sufficient merely to allege, or to show, that the employee acted incompetently. A plaintiff must establish 'by affirmative proof' that the employer actually knew of the incompetence, or that the employer reasonably should have known of it." *Id.* at 683 (citing *Lane v. Central Bank*, 425 So. 2d 1098, 1100 (Ala. 1983)).

As noted above, Pickens fails to present evidence from which a jury could reasonably infer that Gray was incompetent, much less evidence that Guy Enterprises should have known he was incompetent. Gray held a valid CDL, had received training at a truck driving school in Vernon, Alabama, and had commercial driving experience with a clean driving record (no tickets or accidents). (Doc. 25-5 at 7-9 (21:9-22, 28:1-30:23)). Furthermore, Gray committed no acts during his employment with Guy Enterprises before the accident at the subject of this lawsuit that justify or require his termination. Pickens' argument that Guy Enterprises' motion is "devoid of any evidence that Defendant Guy[] Enterprises adequately trains and supervises [its] employees" (doc. 27 at 9) does not change this result. Pickens' focuses on what it contends is a "completely failed to have any identifiable training procedures or policies in place." (*Id.*). While training policies and procedures are one way that a company can work to ensure that its employees are competent to do their jobs, it is not the only way and a lack of an employer-specific training course is not evidence that Gray was not competent to drive a tractor trailer. Simply put, there is no

14

evidence from which a jury could reasonably infer that Guy Enterprises was negligent or wanton in its hiring, training, retention, or supervision of Gray, and Guy Enterprises is due summary judgment on this claim.

### IV. Conclusion

Guy Enterprises motion for summary judgment, (doc. 24), is **GRANTED IN PART AND DENIED IN PART**. The undersigned finds no genuine issue of material fact and that Defendant Guy Enterprises is entitled to judgment as a matter of law as to Count 2 (recklessness/wantonness), Count 3 (negligent/wanton entrustment), Count 4 (negligent hiring, training, and supervision), Count 5 (respondeat superior), and Count 6 (fictitious parties). Counts 2, 3, 4, 5, and 6 are **DISMISSED**.

Because genuine issues of material fact remain, Count 1 (Negligence) will go forward. The parties are encouraged to discuss alternative dispute resolution, including the potential for mediation. The parties are **ORDERED** to file a joint status report by **August 20, 2018**, regarding the status of such discussions and whether they believe mediation would be beneficial to the resolution of the remaining claim (including a timeframe if they intend to pursue mediation).

DONE this 6th day of August, 2018.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE